NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MARIAMA MONIQUE CHANGAMIRE          )
SHAW,                               )
                                    )
            Appellant/Cross-Appellee, )
                                    )
v.                                  )          Case No. 2D14-2384
                                    )
KEIBA LYNN SHAW,                    )
                                    )
            Appellee/Cross-Appellant. )
                                    )
_____)

Opinion filed August 27, 2014.

Appeal from the Circuit Court for
Hillsborough County; Laurel M. Lee, Judge.

Brett R. Rahall, Tampa, and Ellen E. Ware
of Ware Law Group, P.A., Tampa, for
Appellant/Cross-Appellee.

Deborah L. Thomson and Lara G. Davis of
The Women's Law Group, P.L., Tampa,
and Adam B. Cordover of The Law Firm of
Adam B. Cordover, P.A., Tampa for
Appellee/Cross-Appellant.


CERTIFICATION OF ORDER
REQUIRING IMMEDIATE RESOLUTION
BY THE SUPREME COURT


EN BANC

PER CURIAM.

Appellant Mariama M. Changamire Shaw seeks review of a circuit court order dismissing her amended petition for dissolution of marriage, and Appellee Keiba Lynn Shaw has filed a notice of cross-appeal of that order. Appellant and Appellee are same-sex partners who married in Massachusetts in 2010 and subsequently relocated to Florida. The couple separated in October 2013, and Appellant filed for divorce in Florida in January 2014. The parties voluntarily entered into a collaborative marital settlement agreement in March 2014, and Appellant filed an amended petition for dissolution seeking to have the agreement incorporated into a final judgment of dissolution. Citing Florida law that expressly provides that same-sex marriages will not be recognized in Florida,[1] the circuit court dismissed the petition for lack of "jurisdiction to dissolve that which does not exist under law."

Shortly after Appellant filed the notice of appeal, she filed a suggestion to certify the case as requiring immediate resolution by the Florida Supreme Court. See Fla. R. App. P. 9.125. Appellant asserted that in addition to challenging the circuit court's determination that Florida law prohibits the dissolution of same-sex marriages sanctioned by other states, the appeal challenges the circuit court's rejection of her constitutionality challenge to that law. Appellee filed a response agreeing that the appeal required immediate resolution and a cross-suggestion to certify the case pursuant to rule 9.125. Appellee asserted that petitions for dissolution of same-sex marriages are being unevenly adjudicated around the State of Florida. On June 26,

---

[1]Article I, § 27, Fla. Const.; § 741.212(1), Fla. Stat. (2013).

- 2 -

2014, a panel of this court entered an order denying the suggestion and cross-suggestion to pass the case through to the supreme court for immediate resolution.

In the meantime, the Broward County Circuit Court issued an order granting a motion for declaratory judgment in a same-sex divorce case and ruling that Florida's same-sex marriage bans are unconstitutional. See In re Marriage of Heather Brassner, 21 Fla. L. Weekly Supp. 920a (Fla. 17th Cir. Ct. August 4, 2014). The circuit court stayed execution of that judgment pending the outcome of the likely appeals of two other Florida circuit court cases involving similar issues. Id.; see also Pareto v. Ruvin, 21 Fla. L. Weekly Supp. 899a (Fla. 11th Cir. Ct. July 25, 2014) (declaring Florida's same-sex marriage bans unconstitutional in a suit filed by several same-sex couples who were denied marriage licenses in Miami-Dade County), appeal docketed sub nom. State v. Pareto, No. 3D14-1816; Huntsman v. Heavilin, 21 Fla. L. Weekly Supp. 916a (Fla. 16th Cir. Ct. July 17, 2014) (declaring Florida's same-sex marriage bans unconstitutional in a suit filed by a same-sex couple who was denied a marriage license in Monroe County), appeal docketed sub nom. State v. Huntsman, No. 3D14-1783.

In another development, the Family Law Section of the Florida Bar and the Florida Chapter of the American Academy of Matrimonial Lawyers filed a motion seeking leave to file an amicus curiae brief in this appeal. See Fla. R. App. P. 9.370. These amici curiae assert that the circuit court's ruling denies access to Florida courts to same-sex couples validly married in other states but living in Florida. They seek to file an amicus brief "as a matter of family and matrimonial lawyers seeking finality and certainty in their area of practice, and to promote and protect the rights of *all* Floridians

equally to access our court system and to rely upon the legal rights and obligations of civil marriage."

On August 14, 2014, this court on its own motion determined that the question of whether to pass the case through to the supreme court for immediate resolution should be considered en banc. See Fla. R. App. P. 9.331(a). We conclude that certification is appropriate on our own motion pursuant to rule 9.125(a). We therefore certify that the order on appeal requires immediate resolution by the Florida Supreme Court because the issues pending are of great public importance and will have a great effect on the proper administration of justice throughout the state.

Although the dissent correctly notes that the district courts of appeal are capable of resolving constitutional questions, the dissent oversimplifies the issue in this case and underestimates its public importance and the effect that delay will have on the proper administration of justice. The issue presented to the circuit court was not solely an analysis of whether the Full Faith and Credit Clause of the United States Constitution requires giving recognition to the parties' out-of-state marriage for the purposes of dissolution. The issue was whether Florida's ban on same-sex marriage and the prohibition on recognizing such marriages unconstitutionally limits various constitutional guaranties including full faith and credit, access to courts, equal protection, and the right to travel. This issue was extensively briefed and argued by the parties before the trial court, and the court rejected the argument and dismissed the petition for dissolution by relying on Florida's ban on same-sex marriage and the constitutional and statutory prohibitions on giving recognition to such marriages. Furthermore, at least three other Florida courts have recently issued conflicting decisions concluding that Florida's ban on

- 4 -

same-sex marriage is unconstitutional, and appeals have been docketed in two of those cases.

As for the issue of immediacy, this is not simply a question of delay versus expeditious resolution of a solitary dissolution case. In typical dissolution cases the legal and factual issues have been resolved in the trial court, the marriages have been dissolved, custody and child support issues have been addressed, the marital assets and debts have been distributed, and alimony has been awarded. Generally, appellate review in such cases will not involve questions of constitutional magnitude. In this case the parties were not granted access to the courts and have not even begun the adjudication process including dissolution of the marriage or approval of their settlement agreement. Further, if the trial court's ruling were to be upheld by this court, the parties' only options to achieve dissolution would be to seek review by the Florida Supreme Court or to begin the lengthy process of establishing residency in a state that will exercise jurisdiction over a same-sex marriage. Others similarly situated would face the same challenge of establishing residence elsewhere. Should the district courts disagree, couples in different districts will receive disparate treatment until the issue is settled by the Florida Supreme Court. In any event, because of the constitutional implications the issue will likely be addressed by the Florida Supreme Court regardless of any decision we might make.

Resolution of the constitutional questions will no doubt impact far more individuals than the two involved here. And there can be little doubt that until the constitutional questions are finally resolved by the Florida Supreme Court or the United States Supreme Court, there will be a great impact on the proper administration of

justice in Florida. Similarly, in light of those questions, it seems clear that this is a matter of great public importance.


CASANUEVA, SILBERMAN, KELLY, VILLANTI, WALLACE, KHOUZAM, CRENSHAW, MORRIS, BLACK, and SLEET, JJ.,[2] Concur.

ALTENBERND, J., Dissents with opinion in which DAVIS, C.J., and LaROSE, J., Concur.


ALTENBERND, Judge, Dissenting.

Under article V, section 3(b)(5) of the Florida Constitution, the supreme court's jurisdiction to accept cases passed through from the district courts without a disposition is restricted to a very limited group of cases. The judges of this court must certify that such a case requires "immediate" resolution and that the "order" on appeal presents issues of "great public importance" or is an order that will have "a great effect on the proper administration of justice throughout the state." This court has been very selective in the process of sending cases to the supreme court before they are briefed and before this court has issued its own opinion. See State v. Adkins, 71 So. 3d 184, 185 & n.1 (case accepted by supreme court on pass through and circuit court reversed by State v. Adkins, 96 So. 3d 412 (Fla. 2012)). Although this case is of importance to these parties, I cannot agree that this case is a proper subject for pass through.

---

[2]Judge Northcutt is recused.

This couple lawfully married in Massachusetts in 2010. After moving to Florida, the marriage became irretrievably broken. They filed a petition for dissolution of marriage and submitted to the circuit court an agreed final judgment incorporating a marital settlement agreement. The record is unclear as to how the jurisdiction of the circuit court became an issue in this case. However, in March 2014, the attorney for the petitioner provided notice to the Attorney General that the case involved a constitutional challenge to section 741.212(1), Florida Statutes (2013), and article I, section 27 of the Florida Constitution. Each party filed a memorandum arguing that the court had jurisdiction and that the provisions were unconstitutional for various reasons. The record contains transcripts of those hearings. The Attorney General did not file an appearance, and no one argued in support of the legal provisions. The circuit court then entered the order on appeal, which determined that the circuit court had no jurisdiction to grant a divorce because of section 741.212(1)[3] and article I, section 27 of the Florida Constitution.[4] The order contains no discussion of any constitutional argument and no express constitutional ruling. Most important, it has no discussion of

---

[3]Section 741.212(1) provides:
　　Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.

[4]Article I, section 27 of the Florida Constitution, which is within the declaration of rights, states: "Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized."

the constitutionality of these provisions under the Full Faith and Credit Clause of the U.S. Constitution. See art. IV, § 1, U.S. Const.[5]

Both parties have appealed this order that refuses to give credit to this lawful out-of-state same-sex marriage for purposes of its dissolution. Apparently, no party intends to argue that the circuit court correctly dismissed this dissolution proceeding. The Attorney General has made no appearance in this case, and we do not know whether the Attorney General will argue that Florida law constitutionally prohibits these Florida residents from obtaining a divorce.[6]

It is important to understand that the issue in this case is not whether Florida is constitutionally compelled to marry same-sex couples. Even if the United States Supreme Court ultimately holds that Florida can reserve the rights and privileges of civil marriage in Florida to heterosexual couples, many other states have already legalized such same-sex marriages. Although the parties argued broader issues to the circuit court, the narrow, dispositive issue in this case is whether Florida, under the Full Faith and Credit Clause of the U.S. Constitution, must give credit to these lawful out-of-state marriages for the purpose of dissolution. Presumably, this issue is comparable to the question of whether, after January 1, 1968, Florida was required to give such credit to lawful, out-of-state common law marriages. See § 741.211, Fla. Stat. (2013);

_____

[5]Article IV, Section 1 of the U.S. Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State . . . ."

[6]Permitting such divorces would be a relatively minor adjustment to Florida law that would be largely compatible with the policy behind the rest of these Florida provisions. Thus, the Attorney General may not necessarily choose to appeal this issue to the supreme court even if we ultimately rule in favor of the parties.

Johnson v. Lincoln Square Props., Inc., 571 So. 2d 541, 543 (Fla. 2d DCA 1990) (requiring a trial court to give full faith and credit to an out-of-state common law marriage in a claim for consortium); Compagnoni v. Compagnoni, 591 So. 2d 1080, 1081-82 (Fla. 3d DCA 1991) (requiring a trial court to recognize out-of-state common law marriage when distributing assets in a divorce proceeding); Anderson v. Anderson, 577 So. 2d 658, 660 (Fla. 1st DCA 1991) (requiring a trial court to give credit to a Georgia common-law marriage in a dissolution proceeding).

Given that same-sex marriages are a recent development in other states, I am not convinced that Florida's courts will be clogged in the next three years with out-of-state same-sex couples seeking dissolution. I cannot certify that this order will have "a great effect on the proper administration of justice throughout the state" requiring immediate review in the supreme court.

Although the issue on appeal is important to this couple, I am not convinced that the order on appeal presents an issue that is ripe to be treated as one of great public importance. Given that the circuit court dismissed the case without elaboration and that no one has yet appeared as a party to fulfill the function of an appellee, this issue does not seem to me to be one that this court cannot handle on appeal or that we should present to the supreme court as a matter ready for immediate resolution. This court and all of the other district courts consider countless questions of great public importance. A select few of those questions we certify to the supreme court after we have issued a reasoned decision. We pass through these questions only when they have a level of statewide urgency. Unfortunately, divorces and divorce appeals take too long in many cases. Yet, we delay sending cases to the supreme court even

- 9 -

when the rights of children are at stake. I see no reason to believe that the circumstances of this single case require special, expedited treatment.[7]

We have an order from one circuit court judge containing no reasoning as to the issue on appeal. That order is not binding law on her colleagues in the Thirteenth Judicial Circuit, much less on the judges in other circuits. I am confident that this court can ably consider this appeal and reach a proper resolution. Our decision will resolve the issue for all trial courts in Florida unless another district court disagrees with us. See Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992). This issue, unlike the constitutionality of the ban on same sex marriage, may never require the attention of the supreme court.[8] If we believe the case has some immediacy, we should not grant extensions in this case but should expedite the process. Indeed, we could convert the case to a petition for writ of mandamus, which would allow rapid determination of whether the circuit court was legally required to give credit to the out-of-state marriage in this dissolution proceeding.

---

[7]Apparently recognizing the risk that the circuit court would not enter the judgment of dissolution, the parties themselves in their marital settlement agreement announced their intent that the agreement "shall be binding and the final agreement of the Parties, regardless of whether the State of Florida grants this dissolution of marriage, relief must be sought in another jurisdiction, or dissolution of this marriage cannot be obtained."

[8]If this court were to hold the statute or the state constitutional provision unconstitutional as applied to dissolution proceedings involving such out-of-state marriages, the Florida Supreme Court would have mandatory appeal jurisdiction over that ruling. See art. V, § 3(b)(1), Fla. Const. On questions controlled by the U.S. Constitution, the United States Supreme Court has occasionally taken a case from this court when it was not reviewed by the Florida Supreme Court. See Palmore v. Sidoti, 466 U.S. 429, 431 (1984).